USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  5/19/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

           -against-

ANTHONY WALLACE,

               Defendant.

1:24-cr-411-MKV

**ORDER DENYING
MOTION TO SUPPRESS**

MARY KAY VYSKOCIL, United States District Judge:

Before the Court is a motion by Defendant Anthony Wallace [ECF No. 29, (the "Motion")] pursuant to Federal Rule of Criminal Procedure 12 and the Fourth Amendment, which seeks to suppress evidence obtained following the execution of an April 5, 2024 Electronically Stored Information ("ESI") search warrant [ECF No. 30–2, (the "Search Warrant")].  For the reasons set forth below, the motion to suppress is DENIED.

## BACKGROUND

On April 5, 2024, Magistrate Judge Tarnofsky issued the Search Warrant authorizing the search and review of ESI on a cellphone (the "Subject Device").  *See* Search Warrant.  The Search Warrant—the warrant Defendant now challenges in his motion—was issued based on an affidavit submitted by Courtney Thorpe, a Detective with the New York City Police Department who is currently assigned to the Child Exploitation and Human Trafficking Joint Task Force of the Federal Bureau of Investigation.  *See* ECF No. 30–1, (the "Thorpe Affidavit").  Judge Tarnofsky found that the application and the supporting Thorpe Affidavit established probable cause sufficient to justify a search of the Subject Device which was described as "a Black Vortex Cellphone, with no case, two camera lenses on its back, and a cracked screen on its front" that was allegedly taken from the Defendant by a minor victim ("Jane Doe").  *See* Thorpe Affidavit at 3, ¶ 3.

In particular, the Affidavit set forth facts supporting probable cause to believe that Defendant had engaged in the "Subject Offenses," which the Affidavit defined as violations of Title 18, United States Code, Sections 1201 (kidnapping), 1591(a) (sex trafficking of children or by force, fraud, or coercion), 2252A (possession, distribution, and production child pornography), and 2 (aiding or abetting those crimes).  *See* Thorpe Affidavit at 4, ¶ 6.  These facts included, *inter alia*, that through Detective Thorpe's investigation, his review of law enforcement documents and reports, and his conversations with Jane Doe he learned that Jane Doe met Defendant when she was walking in Binghamton, New York on or about March 10, 2024, Defendant used the Subject Device to communicate with other individuals to arrange or attempt to arrange for other individuals to engage in sexual intercourse with Jane Doe in exchange for money, Defendant used the Subject Device to record a video of Jane Doe performing oral sex on him, Defendant and Jane Doe took a bus from Binghamton, New York to New York, New York on or about April 1, 2024 where they stayed in an abandoned apartment, Defendant forcibly raped Jane Doe in that abandoned apartment, which he had barricaded, and on or about April 4, 2024 Jane Doe escaped from that apartment taking with her the Subject Device.  *See* Thorpe Affidavit at 5–6, ¶ 7.  In addition, the Thorpe Affidavit also relied on information from medical professionals who examined Jane Doe after she escaped and concluded that she had sustained injuries consistent with having been sexually assaulted.  *See* Thorpe Affidavit at 6, ¶ 7(l).

In addition, the Thorpe Affidavit set forth detailed facts supporting probable cause to believe that the Subject Device was possessed and used by Defendant to commit the Subject Offenses.  *See* Thorpe Affidavit at 7, ¶ 8.  The Thorpe Affidavit relied on several facts particular to this case, including that Defendant had used the Subject Device in or around March 10-11, 2024 to access a third-party application called Tagged  to communicate with other individuals and

arrange for those individuals to have sexual intercourse with Jane Doe in exchange for money, Defendant used the Subject Device in or around March and April 2024 to record a video of Jane Doe performing oral sex on Defendant, and Defendant was in possession of the Subject Device from on or about March 10, 2024 when he first met Jane Doe to on or about April 4, 2024 when Jane Doe escaped from Defendant and took the Subject Device.  *See* Thorpe Affidavit at 7, ¶ 8. The Thorpe Affidavit also set forth twelve sub-categories of evidence related to the Subject Offenses likely to be found on the Subject Device.  *See* Affidavit at 7–8, ¶ 10(a)–(l).

The Search Warrant, along with Attachment A, issued by Magistrate Judge Tarnofsky identified the Subject Device with specificity, using both detailed description and photographs, as the property to be searched, and stated that there was probable cause to believe that the ESI contained on the Subject Device had evidence, fruits, and instrumentalities of violations of 18 United States Code Sections 1201 (kidnapping), 1591(a) (sex trafficking of children or by force, fraud, or coercion), 2552A (child pornography), and 2 (aiding and abetting those crimes).  *See* Search Warrant, Attachment A.   In addition, the Search Warrant through Attachment A particularized twelve sub-categories of the type of evidence related to the violations of 18 United States Code Sections 1201 (kidnapping), 1591(a) (sex trafficking of children or by force, fraud, or coercion), 2552A (child pornography), and 2 (aiding and abetting those crimes) to be reviewed including:

- Communications, including text, data, chat, MMS (*i.e.*, multimedia messaging service) and SMS (*i.e.*, short message service), email messages, voicemail messages, or messages on social media or messaging applications, including the application called Tagged, installed on the device (collectively, "text messages"), any attachments to those text messages, such as digital photographs and videos, and any associated information, such as the phone number or user ID from which the text message was sent, pertaining to the Subject Offenses, including communications with co-conspirators, sex trafficking customers, or Victim-1 (i.e., a minor girl who was kidnapped by ANTHONY WALLACE (the "Target Subject") in or around March 2024 at the age of 15), relating to the Subject Offenses;

- Evidence of payments sent or received to the Target Subject in exchange for commercial sex acts with Victim-1 or other minor victims;

- Evidence of the solicitation of money, or anything of value, for example through online advertisements or postings to apps, in exchange for commercial sex acts with Victim-1 or other minor victims;

- Passwords or other information needed to access other accounts or devices that may contain relevant information;

- Evidence concerning the location of other evidence of the Subject Offenses, including but not limited to information concerning app(s), email or other social media accounts potentially containing relevant evidence;

- Historical location data, including GPS data, showing the user's movements;

- Internet browsing activity and searches relating to the Subject Offenses;

- Digital photographs and video relating to the Subject Offenses, including images of Victim-1 and other potential victims;

- Calendar or other scheduling information related to the Subject Offenses (including but not limited to itineraries and meetings with co-conspirators or customers or other victims);

- Evidence of user attribution showing who used or owned the Subject Device at the time the records and items described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

-  Evidence of the motive for or planning of the Subject Offenses, including the potential grooming of any victim or recruitment of any criminal confederate; and

- Any and all information containing evidence of affiliations, memberships, buddy lists, profiles, chat sessions, chat services, billboards, newsgroups, and websites pertaining to child pornography, minors engaged in sexually explicit conduct, or a sexual interest in minors and/or children.

*See* Search Warrant, Attachment A.

Defendant now moves to suppress all of the evidence obtained following the execution the

Search Warrant.  [ECF No. 30 ("Def. Mem.")].  In particular, Defendant argues that the Search

Warrant lacked particularity and was overbroad. *Id.* The Government filed a brief in opposition. [ECF No. 33 ("Gov. Opp.")]. The Court has carefully reviewed all the submissions.

## LEGAL STANDARD

The Fourth Amendment to the Constitution of the United States provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. A search warrant cannot be issued without first establishing probable cause. *See United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Kentucky v. King*, 536 U.S. 452, 459 (2011) ("[T]he Fourth Amendment provides that 'a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity.' ")).

Additionally, the Fourth Amendment both requires a search warrant to be sufficiently particularity and forbids it from being overbroad. *See United States v. Purcell*, 967 F.3d 159, 179 (2d Cir. 2020); *United States v. Rosario*, No. 19-CR-807, 2021 WL 5647879, at *5 (S.D.N.Y. Dec. 1, 2021) (the Fourth Amendment "requires particularity and forbids overbreadth"); *United States v. Cioffi,* 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009). "Breadth and particularity are related but distinct concepts." *Purcell*, 967 F.3d at 179 (2d Cir. 2020) (cleaned up); *see also United States v. Hernandez*, No. 09-CR-625, 2010 WL 26544, at *7 (S.D.N.Y. Jan. 6, 2010) ("Although somewhat similar in focus, these are two distinct legal issues . . . ."); *United States v. Cohan*, 628 F. Supp. 2d 355, 359 ("A warrant . . . can be unconstitutionally infirm in two conceptually distinct but related ways: either by seeking specific material as to which no probable cause exists, or by giving so vague a description of the material sought as to impose no meaningful boundaries.").

As "the proponent of the motion to suppress," a defendant seeking to suppress evidence based on an alleged Fourth Amendment violation bears the "burden to establish that the search [or seizure] violated his Fourth Amendment rights." *United States v. Lewis*, 62 F.4th 733, 741 (2d Cir. 2023); *see also United States v. Harry*, 130 F.4th 342, 378 (2d Cir. 2025).

## DISCUSSION

### I.    Particularity

Defendant argues that the search warrant "lacks particularity because it fails to set forth in any meaningful detail the crimes under investigation and the evidence likely to be found," and therefore violates the Fourth Amendment.  Def. Mem. at 8.  Specifically, Defendant argues that "[w]hile the warrant identified the 'Subject Offenses,' it does not actually describe the suspected criminal conduct" in any significant detail and thus it does not provide the executing officers guidance. Def. Mem. at 8.  Defendant argues that without any "meaningful instructions" regarding the communications to be reviewed or a time frame on which to focus the warrant provided "no guardrails" for the law enforcement and allowed them to review Defendant's "entire history of communications on the" Subject Device.  Def. Mem. at 9.

The Second Circuit has explained that to satisfy the Fourth Amendment's particularity requirement, a warrant must (1) "identify the specific offense for which law enforcement have established probable cause," (2) "describe the place to be searched," and (3) "specify the items to be seized by their relation to designated crimes."  *Purcell*, 967 F.3d at 178; *see also Galpin*, 720 F.3d at 445–46 (explaining that the three particularity requirements are (1) identifying "the specific offense for which the police have established probable cause," (2) describing "the place to be searched," and (3) specifying "the items to be seized by their relation to designated crimes").  "It is familiar history that indiscriminate searches and seizures conducted under the authority of

'general warrants' were the immediate evils that motivated the framing and adoption of the Fourth Amendment." *Payton v. New York*, 445 U.S. 573, 583 (1980). Those general warrants "specified only an offense," leaving "to the discretion of the executing officials the decision as to which persons should be arrested and which places should be searched." *Steagald v. United States*, 451 U.S. 204, 220 (1981).

Where the property to be searched is electronic data the Second Circuit has stated that "the particularity requirement assumes even greater importance." *Galpin*, 720 F.3d at 446. "A general search of electronic data is an especially potent threat to privacy because hard drives and e-mail accounts may be 'akin to a residence in terms of the scope and quantity of private information [they] may contain.' " *United States v. Ulbricht*, 858 F.3d 71, 100 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018) (quoting *Galpin*, 720 F.3d at 446). Notwithstanding these heightened privacy concerns when reviewing warrants issued for ESI, "[t]he Fourth Amendment does not require a perfect description of the data to be searched and seized." *Ulbricht*, 858 F.3d at 100. Thus, "[s]earch warrants covering digital data may contain some ambiguity . . . so long as law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant." *Galpin*, 720 F.3d at 446.

As the Government correctly argues, the challenged Search Warrant "identif[ies] the specific offense[s] for which law enforcement ha[d] established probable cause," *Purcell*, 967 F.3d at 178, thereby clearly satisfying the first requirement of particularity. While Defendant is correct that if there is "nothing on the face of the warrant" that "tells the searching officers for what crime the search is being undertaken" the warrant is not sufficiently particular, *United States v.*

7

*Zemlyansky*, 945 F. Supp. 2d 438 (S.D.N.Y. 2013), that is not the case here.  The Search Warrant clearly identified the specific offenses as violations of 18 United States Code Sections 1201 (kidnapping), 1591(a) (sex trafficking of children or by force, fraud, or coercion), 2552A (child pornography), and 2 (aiding and abetting those crimes).  *See* Search Warrant, [ECF No. 30–2]. While it is true that the Search Warrant does not provide as much detail of the purported violations as the Thorpe Affidavit in support of the application and did not attach or incorporate the Affidavit, the inclusion of the specific statutory violations is sufficient.  *See Ulbricht*, 858 F.3d at 101 (finding that warrant "plainly satisfie[d] the basic elements of the particularity requirement" where it "list[ed] the charged crimes"); *see also United States v. Barrett*, No. 1:23-CR-00623, 2025 WL 371084, at *17 (S.D.N.Y. Feb. 3, 2025) (concluding that the warrants issued "readily satisfy the Second Circuit's particularity requirements" because in part the "warrants identified the 'specific offenses' for which probable cause existed"); *United States v. Zeitlin*, No. 23-CR-0419, 2024 WL 3429506, at *4 (S.D.N.Y. July 15, 2024) ("easily dismiss[ing]" Defendant's argument that warrant requires a "factual description of the subject offenses . . . beyond identifying the specific statutory crimes charged").

The Search Warrant also clearly describes "the place to be searched."  *Purcell*, 967 F.3d at 178.  The Search Warrant, through Attachment A, identifies the place to be searched as a "Black Vortex Cellphone, with no case, two camera lenses on its back, and a cracked screen on its front" and includes photographs of the Subject Device.  *See* Search Warrant, Attachment A.  This is plainly sufficient.  *See id.* at 181 (search warrant was sufficiently particular with respect to the place to be searched because it "identified the target Facebook account to be searched"); *see also United States v. Tompkins*, 118 F.4th 280, 287–88 (2d Cir. 2024) (collecting cases); *United States v. Gatto*, 313 F. Supp. 3d 551, 560 (S.D.N.Y. 2018) (concluding that the warrant was sufficiently

particular because it identified the cellphones to be searched); *United States v. Menendez*, No. 23-CR-490, 2024 WL 912210, at *11 (S.D.N.Y. Mar. 4, 2024) ("the warrants describe the places to be searched: the subject [social media] accounts").

Finally, the Search Warrant sufficiently specifies "the items to be seized by their relation to designated crimes" within the Subject Device. *Purcell*, 967 F.3d at 178. Specifically, the Search Warrant authorized law enforcement personnel to review ESI that amounts to evidence, fruits, and or instrumentalities of the Subject Offenses and also provided twelve sub-categories with respect to what the evidence, fruits, and instrumentalities might be. *See* Search Warrant, Attachment A. This is sufficient to satisfy particularity. *See United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990) ("In general, warrants that limit a search to evidence relating to a particular crime, and which provide a list of examples as a means of limiting the items to be seized, are upheld when confronted with a particularity challenge."); *see also United States v. Pugh*, No. 15-CR-116, 2015 WL 9450598, at *22 (E.D.N.Y. Dec. 21, 2015); *United States v. Nejad*, 436 F. Supp. 3d 707, 728 (S.D.N.Y. 2020) (quoting *United States v. Lustyik*, 57 F. Supp. 3d 213 (S.D.N.Y. 2014)) ("Indeed, where, as here, warrants call for the seizure of records relating to the suspected crime or crimes and include a list 'providing examples of the items to be seized,' they have been found to 'offer[ ] sufficient guidance to law enforcement officers to pass constitutional muster.' "); *Barrett*, 2025 WL 371084, at *19 ("The form that the search warrants in this case took is a typical one and one frequently upheld by the courts: that is, the warrants broadly described the items to be seized as evidence, fruits, or instrumentalities of specified federal crimes, and also set forth an illustrative list of items to be seized.") (internal quotations and alterations omitted). The Search Warrant here is sufficiently particular to "enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." *United States v. McDarrah*,

351 F. App'x 558, 561 (2d Cir. 2009) (summary order) (quoting *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992)).

As noted above, Defendant also argues that the failure to include any time limitation within the Search Warrant allowed the searching officers to review Defendant's "entire history of communications on the" Subject Device.  Def. Mem. at 8–9.  While it is true that the lack of a date limitation in a warrant *may* in certain situations render a warrant insufficiently particular, *see, e.g., United States v. Jacobson*, 4 F. Supp. 3d 515, 526 (E.D.N.Y. 2014), it is also settled that "courts in this Circuit routinely deem warrants sufficiently particular that lack any temporal limitation, agreeing that although 'a time frame is relevant, [ ] there is no apparent consensus as to when one is required.' "  *United States v. Ayala*, 740 F. Supp. 3d 314, 336 (S.D.N.Y. 2024) (quoting *United States v. Arias-Casilla*, No. 21-CR-218, 2022 WL 2467781, at *6 (S.D.N.Y. July 6, 2022); *see also Menendez*, 2024 WL 912210, at *12 (collecting cases).

Nevertheless, the Court need not decide whether the lack of clear temporal limitations in the otherwise sufficiently particular Search Warrant renders it insufficiently particular, because, as discussed below, *see infra* Section III, the executing law enforcement officers acted in good-faith reliance on the Search Warrant issued and thus suppression is not warranted.  *See, e.g. United States v. Ganias*, 824 F.3d 199, 209 (2d Cir. 2016) (en banc) ("Because we conclude that the agents acted in good faith, we need not decide whether a Fourth Amendment violation occurred."); *see also Nejad*, 436 F. Supp. 3d at 730 (concluding that the Court "need not decide whether the lack of temporal limitations renders the otherwise sufficiently particular warrants at issue here insufficiently particular because . . . the executing agents acted in good-faith reliance on them."

## II.   **Overbreadth**

A warrant is considered overbroad if its "description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *Purcell*, 967 F.3d at 179 (quoting *Galpin*, 720 F.3d at 446); *see also Hernandez*, 2010 WL 26544, at *7 ("whether the items listed as to be seized in the warrant were overbroad because they lacked probable cause") (internal quotations omitted).  Therefore, a warrant is invalid due to overbreadth "to the extent it permits officers to search or seize items without probable cause that they contain evidence of a crime."  *United States v. Kidd*, 386 F. Supp. 3d 364, 374 (S.D.N.Y. 2019); *see also Zemlyansky*, 945 F. Supp. 2d at 464 (quoting *Hernandez*, 2010 WL 26544, at *8) ("In determining whether a warrant is overbroad, courts must focus on 'whether there exists probable cause to support the breadth of the search that was authorized.' ").

Defendant contends that the Search Warrant here is overbroad, arguing that it "contains unduly broad categories of potentially relevant ESI of a 'catch-all' variety without any nexus to the suspected criminal activity, or any meaningful content-based parameter or other limiting principle."  Def. Mem. at 10.  Defendant further argues that there is nothing in the Search Warrant "that provides probable cause for such a vast, and thus invasive, time period."  Def. Mem. at 11.

The Government responds that Defendant's overbreadth arguments are "indistinguishable from his argument that the Warrant lacked particularity" and nevertheless fails because the Search Warrant "contained twelve specific sub-categories of evidence" which almost all relate to the Subject Offenses of kidnapping, sex trafficking, and distribution, production, and possession of child pornography.  Gov. Opp. at 15–16.  The Court agrees.  *See Zeitlin*, 2024 WL 3429506, at *6 (explaining that "many of defendant's specific examples of claimed overbreadth really go instead to particularity" including the argument that the warrant required more specific statutory

allegations or temporal limitations); *Nejad*, 436 F. Supp. 3d at 731 (concluding that the argument that the search warrant is overbroad because it only makes broad references to violations of statutes is merely a "reformulation of the particularity principle")

Moreover, even considering the merits of these redundant arguments, the Search Warrant is not overbroad. The Search Warrant limited the scope of the Government's searches and seizures to evidence, fruits, and instrumentalities of the *Subject Offenses* for which the Government established probable cause. *See* Search Warrant. Courts routinely find that this limitation is crucial in determining that a warrant is not unconstitutionally overbroad. *See United States v. Garlick*, No. 22-CR-540, 2023 WL 2575664, at *9 (S.D.N.Y. Mar. 20, 2023) (concluding that the search warrants at issue were not overbroad because they limited the review to evidence, fruits, and instrumentalities of the offenses for which the Government established probable cause); s*ee also United States v. Tontisabo*, No. 21-CR-701, 2023 WL 411622, at *3 & n.19 (S.D.N.Y. Jan. 25, 2023) (concluding that a warrant for the application Snapchat was not overbroad because the warrant "ma[de] it clear" that the government sought only evidence "of the subject offenses, intending to seize only information that was evidence of the crime," a search "of a type routinely upheld by courts in this district") (collecting cases); *United States v. Ray*, 541 F. Supp. 3d 355, 398–99 (S.D.N.Y. 2021) (concluding that warrants for various online accounts were not overbroad because they "identified the [s]ubject [o]ffenses and provided probable cause for each of them"); *Lustyik*, 57 F. Supp. 3d at 229 (citing *Riley,* 906 F.2d at 844) (concluding that the warrant at issue was not overbroad because it did not permit the seizure and retention of *all* communications and instead only allowed the government to seize communications for which there was probable cause to believe the communications were evidence of the specified offense violation). Here too the search warrant, through Attachment A, clearly restricted the law enforcement agents search and

seizure to "ESI contained on the Subject Device for evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1201 (kidnapping), 1591(a) (sex trafficking of children or by force, fraud, or coercion), 2252A (possession, distribution, and production child pornography), and 2 (aiding or abetting those crimes) (the "Subject Offenses")."  Search Warrant, Attachment A.

## III.    Good Faith Exception

Even if the Court were to find that the Search Warrant at issue arguably violated the Fourth Amendment, through either lack of particularity or improper overbreadth, suppression would not be appropriate in this situation because the good-faith exception applies.

"A violation of the Fourth Amendment does not necessarily result in the application of the exclusionary rule."  *United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010).  This is because "exclusion has always been our last resort, not our first impulse."  *Herring v. United States,* 555 U.S. 135, 129 (2009) (internal quotation marks omitted).  Thus, under the good faith exception evidence that is "obtained in objectively reasonable reliance on a subsequently invalidated search warrant" does not require suppression.  *United States v. Leon*, 468 U.S. 897, 922 (1984).  This is because the good-faith exception reflects the "animating principle of the exclusionary rule," namely the "deterrence of police misconduct."  *United States v. Clark*, 638 F.3d 89, 99 (2d Cir. 2011).  The exclusionary rule's corrective value justifies its steep cost when the police "exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights."  *United States v. Stokes,* 733 F.3d 438, 443 (2d Cir. 2013) (internal quotation marks and citation omitted).  However, the exclusionary rule does not apply whenever suppressing evidence "might provide marginal deterrence."  *Herring,* 555 U.S. at 141 (internal quotation marks omitted).  This is because when an officer honestly and reasonably believes that he has obtained a valid warrant

13

from a magistrate judge and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment "and thus nothing to deter." *Leon,* 468 U.S. at 920–21.

While the Government has the burden to prove the reasonableness of reliance on a warrant, the Supreme Court made it clear that, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or as we have sometimes put it, in 'objective good faith.' " *Messerschmidt v. Millender,* 565 U.S. 535, 546 (2012) (quoting *Leon,* 468 U.S. at 922–23); *see also United States v. Shafer*, 2022 WL 868901, at *1 (2d Cir. Mar. 24, 2022) (summary order) ("We decide whether the good-faith exception applies keeping in mind that most searches conducted pursuant to a warrant are likely to fall within its protection.") (internal quotations marks omitted).   While this does not end the inquiry into objective reasonableness, "[a] reviewing court must be 'mindful that, in *Leon,* the Supreme Court strongly signaled that most searches conducted pursuant to a warrant would likely fall within its protection.' " *United States v. Levy*, No. 11-CR-62, 2013 WL 664712, at *6 (S.D.N.Y. Feb. 25, 2013), *aff'd*, 803 F.3d 120 (2d Cir. 2015).

The crucial question a Court must ask in determining if the good faith exception applies is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23.   In addition, the Second Circuit has explained that "the good faith exception cannot shield even an officer who relies on a duly issued warrant in at least four circumstances: '(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.' " *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015) (quoting *Clark,* 638 F.3d at 100).

Defendant argues that the good faith exception to the exclusionary rule does not apply here under the fourth exception detailed by the Second Circuit, *i.e.* because the warrant was so facially deficient that reliance upon it was unreasonable.  Def. Mem. at 13–14.

The Court disagrees.  Upon careful review of the Search Warrant issued here it is plainly not so facially deficient as to preclude good-faith reliance.  In particular, as the Court detailed above, the Search Warrant identified the Subject Offenses and provided the executing law enforcement officers a list of the twelve sub-categories of ESI to search for evidence, fruits, and instrumentalities of those Subject Offenses.  *See Ray*, 541 F. Supp. 3d at 395 (concluding that the good faith exception applied because the warrant at issue "identified the Subject Offenses, contained a detailed list of the items to be searched, and limited the agents to searching for evidence, fruits and instrumentalities of the Subject Offenses"); *see also Zeitlin*, 2024 WL 3429506, at *7 (S.D.N.Y. July 15, 2024) ("Defendant's arguments that reliance on the search warrants was unreasonable are simply rehashings of the same arguments he makes for why they were overbroad, insufficiently particular, and lacking in probable cause. Yet something more than mere deficiency is needed to justify the "last resort" of exclusion.").

As the Government correctly urges with respect to Defendant's challenge regarding the lack of a clear temporal boundary in the Search Warrant, "[b]ecause the Second Circuit has never held that the lack of a specific time frame in a warrant renders it overbroad or lacking in particularity, courts have repeatedly held that warrants lacking any temporal limitation were still executed in good faith reliant on the magistrate's authorization."  Gov. Opp. at 17 (citing *Levy*, 2013 WL 664712, at *10–11).  Because there is no clear consensus in this Circuit as to when temporal limitations are required or when the lack thereof alone may invalidate an otherwise valid warrant, the Court cannot find that this would put "a reasonably well-trained officer" on notice "that the

15

search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23; *see also Levy*, 2013 WL 664712, at *11 (there is "no controlling authority [that] requires a specific time frame" and so the court concluded "[i]n these circumstances, it cannot be said that executing officers should have realized a lack of date limitation constituted a facial deficiency" that would render "reliance on it" unreasonable); *Cohan*, 628 F. Supp. 2d at 367; *Nejad*, 436 F. Supp. 3d at 732–33.

The Court therefore concludes that even if the Search Warrant were invalid for one of the reasons that Defendant proffered, suppression of the evidence would be inappropriate here because the search falls comfortably within the good faith exception.

## CONCLUSION

The Court has considered all of the arguments raised and has concluded that none warrant the suppression of evidence or a hearing.  For the foregoing reasons, Defendant's motion to suppress evidence obtained following execution of the Search Warrant is DENIED.  The Clerk of Court is respectfully requested to terminate docket entry number 29.

**SO ORDERED.**

**Date:  May 19, 2025**
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**

16